NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN R. BRENNAN,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No.: 17-4259 (JLL)<br><br>**OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Plaintiff Steven R. Brennan's appeal for judicial review of a final decision issued on behalf of the Commissioner of the Social Security Administration ("Commissioner"), which denied his claim for disability insurance benefits. (ECF No. 1). After careful consideration of the administrative record, submissions made in support of, (ECF No. 15), and in opposition to, (ECF No. 19), the instant appeal, the Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court remands this matter for further proceedings that are consistent with this Opinion.

## I. BACKGROUND[1]

On June 23, 2013, Plaintiff applied for for payment of disability insurance benefits ("DIB") and supplemental security income ("SSI"). (R. 14, 185–92). Plaintiff alleged he was disabled due

---

[1] "R." refers to the Administrative Record, which uses continuous pagination and can be found at ECF Nos. 11 through 11-16.

to chronic pain in his lower back and right knee as a result of a work-related injury on September 22, 2009, and years of strenuous physical labor prior to the injury, as well as by ensuing psychiatric conditions including depression and substance addiction. (*See generally* ECF No. 15 at 9–16; R. 14–26). Plaintiff's applications were denied initially on October 4, 2013, and denied again upon reconsideration on March 13, 2014. (R. 14, 78–99). Following a hearing on Plaintiff's applications on July 28, 2015, Administrative Law Judge Beth Shillin (the "ALJ") determined that Plaintiff was ineligible for payments of DIB and SSI as a result of a five-step inquiry. (R. 14–26).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 22, 2009. (R. 16). At step two, the ALJ determined that Plaintiff suffered from several "severe" impairments: status post spinal fusion, alcoholism, depressive disorder, alcoholic hepatitis, meniscal tear, and obesity. (R. 16). Notwithstanding that finding, the ALJ found at step three that Plaintiff's "severe" impairments did not meet or equal a listed impairment under 20 C.F.R. § 404 that would qualify Plaintiff as disabled. (R. 17–19). In reaching this conclusion, the ALJ considered medical evidence, including the opinion of the State Agency medical consultants who evaluated Plaintiff's applications and reached the same conclusion. (R. 17). The ALJ reasoned that "no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment" with respect to Plaintiff's impairments. (R. 17).

At step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform work under certain conditions: Plaintiff should "never climb ladders, ropes or scaffolding," should avoid "exposure to heights or heavy machinery, . . . concentrated exposure to temperature extremes," and "must be afforded the ability to sit and stand at will." (R. 19). Plaintiff could work, the ALJ found, so long as he "is limited to performing simple, routine and repetitive tasks . . . in a low stress job, defined as not requiring an assembly line pace, with only occasional

decision making required, and occasional changes in the work setting." (R. 19). Finally, the ALJ concluded that Plaintiff was "capable of occasional interaction with the general public, co-workers and supervisors." (R. 19).

In determining Plaintiff's RFC, the ALJ reasoned that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements, concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 23). Specifically, the ALJ assigned great weight to testimony from several of Plaintiff's physicians that Plaintiff had "engaged in drug seeking behavior," overstating the severity of his symptoms in order to obtain "narcotic medications." (R. 20). Both Dr. Decter and Dr. Corona testified that Plaintiff's complaints of pain were "out of proportion" to objective medical prognoses. (R. 20). However, the ALJ also assigned great weight to the lift restriction prescribed by Dr. Nachwalter in determining that Plaintiff was capable of only light physical work. (R. 20–21). The ALJ also concluded that Plaintiff's obesity, "in conjunction with [his] other severe physical impairments, limit[ed Plaintiff] to performing a limited range of light work." (R. 22). Finally, the ALJ considered evidence that Plaintiff is his mother's primary caretaker, "cleans, runs errands and shops," and is therefore "able to perform the full spectrum of unskilled light exertional work tasks." (R. 23–24). With respect to Plaintiff's mental impairments, the ALJ assigned significant weight to Global Assessment of Functioning scores that indicated only "mild to moderate limitations" in social functioning, despite Plaintiff's reports of depression, social anxiety, and suicidal ideation. (R. 21–22). The ALJ also noted that Plaintiff "displayed a good ability for social functioning" at his hearing "by adequately responding to extensive questions, under stressful circumstances, in the presence of strangers." (R. 24). The ALJ concluded that Plaintiff's "ability for social functioning would not significantly impact his ability

to deal with the public, bosses, supervisors, or co-workers in less demanding unskilled work settings." (R. 24).

As a consequence of the RFC analysis, the ALJ determined that Plaintiff was unable to perform his past relevant work—installing sprinklers, plumbing, and operating machinery or delivery vehicles. (R. 24). Nevertheless, at step five, the ALJ concluded with the help of a vocational expert that, considering Plaintiff's age, education, work experience, and RFC, "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," including "occupations such as parking lot/parking garage cashier, . . . small products assembler I/bench assembler, . . . and assembler of electrical accessories." (R. 25). As a result, the ALJ concluded that Plaintiff was ineligible for payment of DIB and SSI. (R. 26).

On February 26, 2016, Plaintiff filed a request to the Appeals Council for review of the ALJ's decision. (R. 8–10). The Appeals Council denied Plaintiff's request, finding no reason to review the ALJ's decision, making the ALJ's determination that Plaintiff was not disabled the final decision by the Commissioner. (R. 1–3). On June 13, 2017, Plaintiff filed this appeal. (*See* ECF No. 1). Plaintiff argues that the ALJ erred at both steps three and four of the analysis. (ECF No. 15 at 17–30). For the reasons set forth below, this matter is remanded for further proceedings consistent with this Opinion.

## II. STANDARD OF REVIEW

This Court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). To determine whether an ALJ's decision is supported by substantial evidence,

this Court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). However, this Court may not "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Consequently, this Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

### III. ANALYSIS

Under the Social Security Act, the Social Security Administration is authorized to pay Social Security Insurance to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity when his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Social Security Act establish a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 416.1520. At step one, an administrative law judge assesses whether the claimant is currently performing substantial gainful activity. 20 C.F.R. § 416.1520(a)(4)(i). If so, the claimant is not disabled and, thus, the process ends. *Id.* If not, the administrative law judge proceeds to step two and determines whether the claimant has a "severe" physical or mental impairment or combination of impairments. 20 C.F.R. § 416.1520(a)(4)(ii). Absent such impairment, the claimant is not disabled. *Id.* Conversely, if the claimant has such an impairment, an administrative law judge proceeds to step three. *Id.* At step

three, an administrative law judge evaluates whether the claimant's severe impairment either meets or is the equivalent of a listed impairment. 20 C.F.R. § 416.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* Otherwise, an administrative law judge moves on to step four, which involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000).

When determining RFC, an "ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Hoyman v. Colvin*, 606 F. App'x 678, 679 (3d Cir. 2015) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). Unsupported diagnoses are not entitled to great weight. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). Moreover, an administrative law judge must provide the reason for providing more or less weight to the evidence. *See Fragnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).

The claimant is not disabled if his RFC allows him to perform his past relevant work. 20 C.F.R. § 416.1520(a)(4)(iv). However, if the claimant's RFC prevents him from doing so, an administrative law judge proceeds to the fifth and final step of the process. *Id.* The final step requires the administrative law judge to "show [that] there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in

three, an administrative law judge evaluates whether the claimant's severe impairment either meets or is the equivalent of a listed impairment. 20 C.F.R. § 416.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* Otherwise, an administrative law judge moves on to step four, which involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000).

When determining RFC, an "ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Hoyman v. Colvin*, 606 F. App'x 678, 679 (3d Cir. 2015) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). Unsupported diagnoses are not entitled to great weight. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). Moreover, an administrative law judge must provide the reason for providing more or less weight to the evidence. *See Fragnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).

The claimant is not disabled if his RFC allows him to perform his past relevant work. 20 C.F.R. § 416.1520(a)(4)(iv). However, if the claimant's RFC prevents him from doing so, an administrative law judge proceeds to the fifth and final step of the process. *Id.* The final step requires the administrative law judge to "show [that] there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in

determining whether she is capable of performing work and is not disabled." *Id.* Notably, an administrative law judge typically seeks the assistance of a vocational expert at this final step. *Id.*

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings." *Id.* at 263 n.2 (citing *Bowen v. Yuckert*, 482 U.S. 137, 146–47 n.5 (1987)). The Commissioner bears the burden of proof for the final step. *See id.* at 263.

### A.  Step Three: Listed Impairments

Plaintiff argues that the ALJ erred at step three in finding that Plaintiff failed to meet the criteria for Listings 1.04, 12.04, and 12.09, and in failing to consider the combined effects of all Plaintiff's impairments when considering those criteria. (ECF No. 15 at 20–22, 26).

#### 1. Listing 1.04

Plaintiff maintains that the ALJ's finding that Plaintiff failed to meet the requirements for Listing 1.04 is erroneous because the ALJ "omitted [Plaintiff's] crucial diagnosis of lumbar spinal stenosis" and "ignored [Plaintiff's] testimony in regards to his marked restrictions in his ability to walk or stand for any significant periods of time." (ECF No. 15 at 20). The Court disagrees. Listing 1.04 requires a severity level of C, which is satisfied when a claimant's lumbar spinal stenosis results in pseudoclaudication, which is supported by a finding that the claimant has the "inability to ambulate effectively." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04C. Contrary to Plaintiff's argument, the ALJ did acknowledge Plaintiff's diagnosis of lumbar spinal stenosis, except she found "no evidence that [his] back disorder has resulted in an inability to ambulate effectively." (R. 17). The ALJ explained that ineffective ambulation requires such "insufficient lower extremity functioning" that a claimant is unable to walk without assistance from a device

that requires operation by both arms, and that there was no evidence in the record that Plaintiff's ability to ambulate was so severely limited. (R. 17). The Court therefore concludes that the ALJ's finding that Plaintiff did not meet the requirements for Listing 1.04 was supported by substantial evidence. *See Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 93 (3d Cir. 2007) (concluding that the ALJ's step-three analysis was supported by substantial evidence where the ALJ "review[ed] all of the objective medical evidence . . . and explicitly stat[ed] which Listings he was considering").

### 2. Listing 12.04 & Combined Effects

Plaintiff next claims that the ALJ erred in finding that Plaintiff did not satisfy the requirements of Listing 12.04 (Affective Disorders). (ECF No. 15 at 20–21). Specifically, Plaintiff disputes the ALJ's determination that Plaintiff failed to satisfy at least two of the Paragraph B criteria: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

The ALJ considered each of these criteria in turn, noting that "[a] marked limitation means more than moderate but less than extreme," and finding that Plaintiff showed only "mild" or "moderate" difficulties in activities of daily living and concentration. (R. 17–18). In so finding, the ALJ considered evidence that Plaintiff "attends [Alcoholics Anonymous] meetings, . . . runs errands[,] . . . prepares meals[,] . . . does household chores[,] . . . [and] drives a car." (R. 18). As to Plaintiff's social functioning, the ALJ considered Plaintiff's allegations of "severe social anxiety," but determined that he had only "moderate" social difficulties because of evidence that he "is able to attend meetings, shop, care for his mother and periodically even work." (R. 18). The ALJ assigned significant weight to Plaintiff's Global Assessment of Functioning scores, which

8

indicated Plaintiff suffered from "some mild symptoms or some difficulty in social, occupational or school functioning," but generally indicated that Plaintiff "function[ed] pretty well." (R. 21). Finally, the ALJ noted that the record established that Plaintiff experienced "1-2 episodes of decompensation," including a January 2015 admission for psychological evaluation due to suicidal ideation, a March 2015 visit to the emergency room for suicidal thoughts, and a feeling of increased depression and alcohol use around the time of the anniversary of his father's death. (R. 18, 21–22). However, because the ALJ found that Plaintiff's mental impairments did not cause "marked" limitations in any of the first three categories, and because at least two out of four criteria must be met, the ALJ concluded that the Paragraph B criteria were not satisfied. (R. 18).

The ALJ's decision includes a finding that Plaintiff "does not have an impairment or combination of impairments" that meets one of the listings. (R. 17). Nevertheless, Plaintiff maintains that, aside from this "bare conclusory statement," the ALJ "failed to . . . perform any analysis in her decision" expressly considering "the combined effects of [Plaintiff's] numerous severe impairments," as the ALJ was required to do, (ECF No. 15 at 26–27 (citing 20 C.F.R. § 404.1526(b)(3) (if a claimant has a "combination of impairments," the SSA will consider whether that "combination of impairments is medically equivalent to [a] listing")). The Court agrees. At step two, the ALJ determined that Plaintiff suffered from a combination of both mental and physical impairments. (R. 16). However, in considering whether Plaintiff satisfied the requirements for Listing 12.04, the ALJ explicitly found that "[t]he severity of [Plaintiff's] *mental* impairments, considered singly and in combination, do not meet or medically equal" the 12.04 criteria. (R. 17 (emphasis added); *see also* R. 18 (explicitly considering Plaintiff's "*mental* impairments" only) (emphasis added)). Therefore, is not clear whether the ALJ considered the effects that Plaintiff's *physical* impairments might have, in combination with the effects of his

mental impairments, on the abilities that require analysis under Listing 12.04. In particular, the ALJ should have explicitly considered whether Plaintiff's status post spinal fusion, alcoholic hepatitis, meniscal tear, or obesity, further restricted Plaintiff's activities of daily living, social functioning, or ability to maintain concentration, persistence, or pace, such that, when considered together with the effects of his depressive disorder, two or more of the Listing 12.04 criteria were satisfied. *See Bierilo v. Comm'r of Soc. Sec.*, No. 13-1183, 2014 WL 1883681, at *3 (D.N.J. May 12, 2014) (remanding where the ALJ "failed to consider the total effect of Plaintiff's mental impairments and physical impairments combined" in a Listing 12.04 analysis); *Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 152 (3d Cir. 2008) (instructing the ALJ on remand to consider the effects of all mental and physical impairments, including "back problems" and "depression," in combination); *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003) (noting that the "ALJ's failure to consider expressly the combined effect of [the plaintiff's] asthma and depression on his ability to engage in gainful employment is potentially troubling," but determining that the error was harmless given evidence that the plaintiff's depression was not severe).

The Commissioner argues that, even if the ALJ failed to consider all of Plaintiff's impairments in combination, any such failure was harmless. (ECF No. 19 at 20–21). The Court disagrees. In considering Plaintiff's impairments under Listing 12.04, the ALJ found that Plaintiff's mental impairments alone caused Plaintiff considerable difficulty in each of the four categories, but assessed those difficulties as "moderate," "mild," or not sufficiently consistent or extended. (R. 17–18). If the ALJ were to consider the *totality* of Plaintiff's impairments, she could foreseeably find that Plaintiff's physical impairments exacerbated the limitations caused by his mental impairments in his daily living, social functioning, concentration, or episodes of decompensation such that the combined effects met or exceeded the listing criteria. Because

Plaintiff's mental impairments alone were just shy of satisfying each of the Listing 12.04 requirements, and only two out of four must be satisfied in order to qualify as disabled under that listing, the Court cannot be certain that this error was harmless. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 & n.3 (3d Cir. 2009) (vacating and remanding where ALJ's decision did not discuss the combined effects of the plaintiff's impairments and noting that "absent analysis of the cumulative impact" of all impairments, "we are at a loss in our reviewing function").

Because the Court has determined that remand is appropriate, the Court will not address Plaintiff's remaining arguments concerning the ALJ's RFC determination, as they will necessarily be addressed on remand.

## IV. CONCLUSION

For the aforementioned reasons, the Court remands this matter for further proceedings that are consistent with the instructions contained herein. An appropriate Order accompanies this Opinion.

DATED: October 24, 2018

JOSE L. LINARES
Chief Judge, United States District Court